IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 10, 2021 Session

**STEVEN JEFFREY ARCHER v. SODEXO OPERATIONS, LLC, ET AL.**

**Appeal from the Circuit Court for Shelby County**
**No. CT-5316-19     James F. Russell, Judge**

_____

**No. W2020-01176-COA-R9-CV**

_____

This interlocutory appeal arises from a health care liability action. The defendant filed a motion to dismiss based on the statute of limitations. In response, the plaintiff invoked the discovery rule and argued that his claim was timely filed after he learned the identity of the defendant. The plaintiff submitted an affidavit of counsel in an effort to detail the due diligence undertaken by the plaintiff to ascertain the identity of the defendant. Upon considering the affidavit, the trial court denied the defendant's motion to dismiss. However, the trial court granted permission for the defendant to seek an interlocutory appeal. This Court granted the defendant's application. We now affirm the trial court's order and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed**
**and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Sean W. Martin and Jordan D. Watson, Chattanooga, Tennessee, for the appellant, Sodexo Operations, LLC and Sodexo, Inc.

William B. Walk, Jr., and Carl I. Jacobson, Memphis, Tennessee, for the appellee, Steven Jeffrey Archer.

**OPINION**

**I.   FACTS & PROCEDURAL HISTORY**

According to the complaint filed in this matter, Steven Kelly Archer ("Decedent"), was transported to the emergency department of Saint Francis Hospital in Memphis,

Tennessee, on August 25, 2018. Decedent was dependent on a percutaneous endoscopic gastrostomy tube ("PEG tube") due to radiation therapy to his neck for laryngeal cancer, and his PEG tube was malfunctioning. He was admitted to St. Francis, and an "Order for NPO (nothing by mouth)" was entered that same day. Despite the order, however, Decedent was allegedly "given a full breakfast tray" the next morning on August 26. The complaint alleges that Decedent aspirated on the food and was found unresponsive by "medical staff." After multiple rounds of CPR, he was transferred to the intensive care unit, but Decedent suffered a cardiopulmonary arrest and severe anoxic brain injury. On September 6, Decedent was transferred to another facility for long term care, and he died on February 14, 2019.

On June 26, 2019, Decedent's son and next of kin, Steven Jeffrey Archer ("Plaintiff"), sent the statutorily required presuit notice of a health care liability action to St. Francis Hospital.[1] On June 27, counsel for St. Francis sent an email to Plaintiff's counsel, which stated, "I don't know much about this one but from what little I know this may be an issue with the dietary people. Dietary is contracted out to Sodexo (I think)." Plaintiff's counsel responded by inquiring as to whether "the hospital would have to be responsible for the feeding and/or overseeing the feeding even if it is contracted out." Counsel for St. Francis responded on July 5 by stating:

> Under TCA 29-26-121 (5), the hospital "shall" provide written notice, based upon reasonable knowledge and information available of any other person, entity, or health care provider who may be properly named as a defendant. The dietary services are contracted out so in compliance of the statute I am simply notifying you that there is another entity who may be a defendant.[2]

---

[1] Tennessee Code Annotated section 29-26-121(a)(1) provides, "Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state." Subsection (c) further provides, "When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." Tenn. Code Ann. § 29-26-121(c). However, such presuit notice "must be sent 'within the statutes of limitations . . . applicable to the provider[.]'" *Shaw v. Gross*, No. W2017-00441-COA-R3-CV, 2018 WL 801536, at *3 (Tenn. Ct. App. Feb. 9, 2018) (quoting Tenn. Code Ann. § 29-26-121(a)(3)).

[2] Tennessee Code Annotated section 29-26-121(a)(5) provides,

In the event a person, entity, or health care provider receives notice of a potential claim for health care liability pursuant to this subsection (a), the person, entity, or health care provider shall, within thirty (30) days of receiving the notice, based upon any reasonable knowledge and information available, provide written notice to the potential claimant of any other person, entity, or health care provider who may be a properly named defendant.

Thus, "recipients of pre-suit notice are to provide the claimant with what amounts to a complete and total

On July 19, Plaintiff retained a different law firm to represent him.

On August 19, Plaintiff's new counsel sent presuit notice to Sodexo, Inc., addressed to its legal department in Gaithersburg, Maryland, and to its registered agent in Brentwood, Tennessee. One week later, August 26 marked one year since Decedent allegedly aspirated while eating from the breakfast tray. On September 19, counsel for Sodexo, Inc., sent a letter and email to Plaintiff's counsel advising Plaintiff pursuant to Tennessee Code Annotated section 29-26-121(a)(5) that Sodexo Operations, LLC, "may be a properly named defendant in a future lawsuit arising out of your client's claims." The address he listed for Sodexo Operations, LLC, was the same address in Gaithersburg, Maryland, to which counsel had sent presuit notice for Sodexo, Inc. The very next day, on September 20, Plaintiff's counsel sent presuit notice to Sodexo Operations, LLC, at its Gaithersburg, Maryland address and to its registered agent, also in Brentwood, Tennessee.

After waiting the statutorily required sixty days after presuit notice, Plaintiff filed a complaint for health care liability and wrongful death on December 5, 2019. The complaint named as defendants St. Francis Hospital; Sodexo, Inc.; and Sodexo Operations, LLC. It alleged that Decedent's death occurred as a result of acts and omissions by the defendants "beginning on or about August 26, 2018," the date on which Decedent was allegedly served the breakfast tray. However, the complaint asserted that Plaintiff's claims were filed in a timely manner within the applicable statute of limitations. It explained that Plaintiff sent presuit notice to St. Francis on June 26 and then received notice that "Sodexo" may be another properly named defendant. Plaintiff described sending presuit notice to Sodexo, Inc., on August 19 and then receiving a response on September 19 stating that Sodexo Operations, LLC, may be a proper defendant. Plaintiff noted that presuit notice was then sent to Sodexo Operations, LLC, on September 20. He attached to his complaint the relevant emails and other written correspondence between Plaintiff's counsel and the attorneys representing the various defendants, as well as the presuit notice documents sent to each defendant at each stage.

Sodexo Operations filed a motion to dismiss pursuant to Rule 12.02, asserting that the claim against it was barred by the statute of limitations because Sodexo Operations did not receive presuit notice within one year "of the alleged incident."[3] It argued that

---

identification of all those 'who may be a properly named defendant' based upon 'the reasonable knowledge and information available' to the party that received pre-suit notice." *Bidwell ex rel. Bidwell v. Strait*, 618 S.W.3d 309, 321 (Tenn. 2021). However, "section 29-26-121(a)(5) does not include a remedy for a defendant's failure to satisfy its notification requirement." *Id.*

[3] Sodexo Operations quoted *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012), in which the Tennessee Supreme Court explained,

The proper way for a defendant to challenge a complaint's compliance with

"Decedent suffered immediate injuries" on August 26 when he aspirated on the food, and therefore, Plaintiff had one year from that date in which to file his claim. Sodexo Operations relied on the plain language of Tennessee Code Annotated section 29-26-116, which provides:

> (a)(1) The statute of limitations in health care liability actions shall be one (1) year as set forth in § 28-3-104.
> (2) In the event the alleged *injury* is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery.

Tenn. Code Ann. § 29-26-116(a) (emphasis added). According to Sodexo Operations, because Decedent suffered an immediate and obvious *injury*, he had only one year to file suit. Because Sodexo Operations did not receive presuit notice within one year of "the alleged incident," it contended that Plaintiff's claim was time-barred.

Plaintiff filed a response to the motion to dismiss, asserting that its claim was timely under the discovery rule. Plaintiff argued that a cause of action accrues under the discovery rule when a patient discovers not only the injury but also the source of the injury. Thus, he asserted that his claim was timely filed once he learned the identity of Sodexo Operations. Specifically, Plaintiff claimed that he did not learn the identity of Sodexo Operations until September 19, 2019, when counsel for Sodexo, Inc., identified Sodexo Operations as a potential defendant. Plaintiff argued that there was nothing in the record to suggest that he should have known, prior to that date, that Decedent's injuries were a result of negligence by Sodexo Operations. According to Plaintiff, it was reasonable to believe that St. Francis had provided the food served in Decedent's hospital room. He argued that he had no reason to know that the food served to Decedent was in fact provided by a third-party contractor or vendor named Sodexo Operations and that no reasonable person would have known that fact before September 19. Alternatively, Plaintiff argued that even if the statute of limitations began to run on June 27 when counsel for St. Francis informed Plaintiff's counsel that "Sodexo" was a potential defendant, then presuit notice was still timely sent to Sodexo Operations on September 20. Either way, Plaintiff argued that the statute of limitations applicable to Sodexo Operations had not expired.[4]

---

Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes.

[4] In the alternative, Plaintiff argued that concepts of fairness and efficiency dictated that Sodexo

Sodexo Operations filed a reply, maintaining that Plaintiff's interpretation of the discovery rule was inconsistent with the plain language of section 29-26-116. It insisted that if a plaintiff discovers "the alleged injury" within the initial one-year period, then the discovery rule in subsection (a)(2) is simply "inapplicable." Sodexo Operations also argued that Plaintiff was "at the very least, on inquiry notice of the cause of action" on August 26. It contended that the statute of limitations begins to run when a plaintiff has sufficient information to alert a reasonable person of the need to investigate, and because Plaintiff was aware of the injury and its cause, the statute was not tolled until Plaintiff ultimately identified Sodexo Operations. It argued, "Once the alleged improper meal was recognized as the cause of the injury, the cause of action accrued."

The trial court held a hearing on the motion to dismiss, at which counsel for Sodexo Operations conceded that the relevant timeline is largely undisputed. He reiterated his argument that once Decedent was injured by the allegedly improper meal, Plaintiff was on notice at that point that "a potential legal action" existed, and therefore, "this is simply not a discovery rule case." He suggested that the discovery rule in section 116 is only intended to apply in latent injury cases in which the "injury" is not discovered within the initial one year. Because Plaintiff knew both the injury and the cause on August 26, he argued that Plaintiff was immediately on inquiry notice as to "all defendants."

In response, Plaintiff's counsel noted that Sodexo Operations had not pointed to any fact to show that Plaintiff "should have seen this" or that its identity "was clearly noted here," such as a sign in the room or in a notation in the paperwork. To the contrary, according to Plaintiff's counsel, it was essentially "undisputed" that there was no reasonable basis for Plaintiff to have any idea that Sodexo Operations existed. He argued that Plaintiff had no reason to know of an additional defendant until, "at the very earliest," the date in June when Plaintiff received notice from counsel for St. Francis about "Sodexo." He also noted that even when counsel for St. Francis mentioned the word "Sodexo," that was all the information Plaintiff had at that point. Thus, counsel said those at his firm had performed internet research on various websites in an attempt to identify the correct entity. He listed specific websites and described the information, or lack thereof, that each disclosed. Counsel also pointed out that even the attorney representing St. Francis was unsure as to the exact identity of the vendor, as she merely stated, "Dietary is contracted out to Sodexo (I think)." He argued that if the attorney representing the hospital did not even know the identity of Sodexo Operations, then Plaintiff should not be expected to have known it either. Accordingly, he argued that the statute of limitations began to run no earlier than June 2019, and the presuit notice in September was timely.

Operations should remain a party because if Sodexo Operations had been identified by an allegation of comparative fault in a defendant's answer, then, according to Plaintiff, he could have amended his complaint to add Sodexo Operations pursuant to Tennessee Code Annotated section 20-1-119. There is nothing to indicate that the trial court reached this alternative argument, and given our resolution of the other issues presented on appeal, we do not reach this alternative argument either.

Counsel for St. Francis participated in the hearing as well but took no position regarding the timeliness of the presuit notice to Sodexo Operations. She did acknowledge, though, that at the time when she notified Plaintiff's counsel about "Sodexo," she had not obtained a copy of the agreement with the hospital to identify the full corporate name of the entity with whom the hospital had contracted. In fact, she admitted that she still did not have a copy of that agreement but that she had obtained an amendment to it after the lawsuit was filed. She suggested that she fulfilled her statutory duty of providing notice of another potential defendant based on the information available to her and that she had no duty to provide "the correct legal name." She also claimed she had no reason to know, at that point, about any distinction between Sodexo, Inc., and Sodexo Operations, LLC.

At the conclusion of the hearing, the trial judge noted that he did not see anything in the record detailing all of the "so-called due diligence" that Plaintiff's counsel had described. Plaintiff's counsel said he would supplement the record with an affidavit to that effect. The trial judge stated that the affidavit "ought to be submitted" but announced that he was denying the motion to dismiss "given the uncertainty" that had existed.

Later that day, Plaintiff submitted an affidavit from an associate attorney at the law firm representing him. She stated that counsel for St. Francis Hospital informed Plaintiff's previous counsel that "Sodexo" may be a properly named defendant on June 27, and that Plaintiff retained his current counsel on July 19. She stated that on July 29, she had reviewed over one hundred internet pages within the Sodexo website in an attempt to determine the proper "Sodexo" defendant. She said she also reviewed the St. Francis Hospital website and job postings for positions within St. Francis Hospital in an effort to identify the proper defendant. She also said she researched the website for the Tennessee Secretary of State in order to ascertain the appropriate legal entity. Based on her research, it appeared to her that Sodexo, Inc., was the entity that provided food services to St. Francis Hospital, and she said that Sodexo Operations, LLC, did not appear in any of the page views or inquiries during her extensive research. She stated that Plaintiff did not become aware of the existence of the entity known as Sodexo Operations, LLC, until receipt of the letter from Sodexo, Inc., dated September 19.

Days later, the trial court entered an order denying the motion to dismiss filed by Sodexo Operations. The trial court noted that Plaintiff's counsel had submitted an affidavit setting forth the due diligence undertaken by Plaintiff to ascertain the identity of the entity that contracted with St. Francis to provide food service for the hospital. The trial court stated that it had reviewed and relied upon that affidavit in concluding that the motion to dismiss was not well taken and should be denied. The trial court subsequently granted Sodexo Operations permission to seek an interlocutory appeal to this Court. We granted the application and framed the issue on appeal as whether the trial court erred in denying the motion to dismiss filed by Sodexo Operations.

## II. STANDARD OF REVIEW

Although Sodexo Operations filed a motion to dismiss based on the statute of limitations, Plaintiff later submitted an affidavit that the court considered in resolving the motion. However, neither party suggests that this court should review the decision as one for summary judgment. This Court encountered the same situation in *Woodruff by & through Cockrell v. Walker*, 542 S.W.3d 486, 494 (Tenn. Ct. App. 2017), when reviewing a trial court's ruling regarding the discovery rule. We said,

> [I]t appears that the trial court may have considered materials other than the complaint in reaching its resolution. Regardless of whether we employ the standard of review applicable to motions to dismiss or motions for summary judgment, however, the facts that are material to the issues raised in this appeal are not in dispute, and we are only tasked with resolving issues of law. We therefore review the trial court's decision de novo with no presumption of correctness. *Myers*, 382 S.W.3d at 307; *see also Shockley v. Mental Health Coop., Inc.*, 429 S.W.3d 582, 589 (Tenn. Ct. App. 2013) ("Regardless of whether we review the case under the standard for Rule 12.02 motions or that for Rule 56 motions, the issue presents a question of law[.]").

We made the same observation in *Smith v. Hauck*, 469 S.W.3d 564, 569 n.1 (Tenn. Ct. App. 2015):

> Regardless of whether the trial court's order in this case should properly be reviewed as one granting a motion to dismiss or as an award of summary judgment, the trial court determined that St. Jude Medical was entitled to a judgment as a matter of law based on the court's understanding of the discovery rule. The facts relevant to our disposition on appeal are not disputed, and our standard of review in this case is the same regardless of which motion was appropriate. *See Rajvongs v. Wright*, No. M2011-01889-COA-R9-CV, 2012 WL 2308563, at *3 n.3 (Tenn. Ct. App. June 18, 2012), *aff'd*, 432 S.W.3d 808 (Tenn. 2013).

We reach the same conclusion here.

## III. DISCUSSION

### A. *Applicability of the Discovery Rule*

On appeal, Sodexo Operations maintains that Plaintiff's claim is time-barred because Plaintiff was fully aware of Decedent's "injury" on the date it occurred, so "the discovery provision of [Tennessee Code Annotated] § 29-26-116(a) is inapplicable." It relies on "the plain language" of the statute to support its position. The statute provides:

(a)(1) The statute of limitations in health care liability actions shall be one (1) year as set forth in § 28-3-104.
(2) In the event the alleged *injury* is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery.

Tenn. Code Ann. § 29-26-116(a) (emphasis added). Citing a dictionary definition of the term "injury," Sodexo Operations argues that Plaintiff was fully aware of Decedent's "injury" on the day it occurred, so the statute's discovery rule simply "does not apply to the present matter." According to Sodexo Operations, "the discovery rule provided by Tenn. Code Ann. § 29-26-116(a) only applies in the event the alleged injury is <u>NOT</u> discovered during the initial one-year period," and "because the Plaintiff clearly discovered the injury during the one-year period following August 26, 2018, the discovery rule set forth in 116(a)(2) was never implicated[.]"

Tennessee caselaw interpreting the statute does not support this position. In fact, the Tennessee Supreme Court rejected this very argument in *Hoffman v. Hospital Affiliates, Inc.*, 652 S.W.2d 341 (Tenn. 1983). In that case, the plaintiff suffered a fall in November 1979 and was told by doctors that she had no broken bones. *Id.* at 342. Three months later, in March 1980, she visited her daughter in Seattle and obtained a further x-ray, which revealed broken bones in her foot. *Id.* She filed suit within one year, in March 1981. *Id.* The Court of Appeals had held that Tennessee Code Annotated section 29-26-116(a)(2) "was not applicable in this case" because "the injury was discovered within one year of the negligent act." *Id.* at 342-44.

In order to resolve the issue on appeal, the Supreme Court deemed it appropriate to "put this issue in proper perspective" by examining "the precedent established by several key medical malpractice holdings" as well as the Medical Malpractice Claims Act. *Id.* at 342. The Court explained that it had adopted the discovery rule in 1974 in *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974), holding that "'the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury.'" After the Supreme Court's adoption of the discovery rule, the legislature had "embodied the doctrine" in the Medical Malpractice Claims Act of 1975. *Hoffman*, 652 S.W.2d at 343. Examining section 29-26-116, the Court noted that "Section 1 provides a plaintiff one year after the cause of action accrued to bring suit," while "Section 2 states that in the event that an alleged injury is not discovered within the one year period, the statute of limitations shall be one year from the date of discovery." *Id.* The Supreme Court acknowledged that "[t]he problem in the case *sub judice* is that the factual pattern does not fit squarely with either section 1 or section 2 of the statute of limitations' provisions." *Id.* The Court recognized that the legislation did not appear to "specifically address what the appropriate period of limitations would be if the alleged negligent act is discovered within the one year period but after the date of injury." *Id.* at

344. As a result, the Court found it appropriate to "look to the common law, to fill in the crack left by the legislature's silence." *Id.* The Court applied "the common law of *Teeters*," in which the Court had construed the phrase "cause of action accrued" to mean the date of discovery of the injury. *Id.* This interpretation fit "squarely with both the wording of the statute and prior case law." *Id.* Thus, the discovery rule would apply "where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action." *Id.* The Court concluded that the Court of Appeals had erred in reading subsection (a) to mean that "the statute of limitations in malpractice actions shall be one (1) year *from the negligent act*; [and] in the event the alleged injury is not discovered within the said one (1) year *from the negligent act*, the period of limitations shall be one (1) year from the date of such discovery." *Id.* That interpretation presumed "a pre-*Teeters* definition." *Id.* Instead, the Supreme Court explained, "The legislature is deemed to be aware of the construction placed upon a particular statute by this Court and presumed to agree with and adopt a meaning which has previously been employed by the judiciary." *Id.* The Supreme Court also noted that its interpretation "eliminates the possibility of the inequitable result that a plaintiff who discovers an alleged malpractice on the 364th day following his injury would be allowed one day to file his suit, whereas, a plaintiff who discovers his injury on the 366th day would be allowed one year to file." *Id.* Applying its interpretation of the statute, the Court held that the plaintiff in that case "discovered her injury" in March 1980 and had one year from then to file suit. *Id.*

Since *Hoffman*, the Court has reiterated that the discovery rule first adopted in *Teeters* "was codified in 1975 as part of Tenn. Code Ann. § 29-26-116(a)(2)." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). "[The] Court has interpreted Tenn. Code Ann. § 29-26-116(a)(2) to mean that the statute of limitations commences to run when the patient 'discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced [the patient's] injuries; and (2) the identity of the defendant who breached the duty.'" *Id.* (quoting *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997)). Moreover, this Court has recognized that "the [Supreme] Court in *Hoffman* said that when an injury was discovered within a year after the negligent act, the statute of limitations began to run on the date of discovery." *Luna v. Lamb*, No. 86-309-II, 1987 WL 7323, at *1 (Tenn. Ct. App. Mar. 4, 1987). In *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355, 359-60 (Tenn. Ct. App. 1986), this Court reviewed numerous cases discussing the discovery rule and stated:

> It is arguable that the "discovery rule" in T.C.A. § 29-[26]-116(a)(2) refers only to the discovery of the harmful effect of the tort. However, the reasonable interpretation of the statute consistent with authorities discussed above is that "discovery" means the discovery of the existence of a right of action, that is, facts which would support an action for tort against the tortfeasor. Such facts include *not only the existence of an injury, but the tortious origin of the injury.*

(emphasis added).

It appears that this Court may have used language that appeared contradictory to the holding in *Hoffman* in *Jones v. Behrman*, No. W2016-00643-COA-R3-CV, 2017 WL 2791172, at *4 (Tenn. Ct. App. June 27, 2017), stating that "Plaintiffs could not rely upon the discovery rule" because they "discovered their cause of action within the one-year period of limitation." Relying on *Jones*, the defendant in *Shaw v. Gross*, No. W2017-00441-COA-R3-CV, 2018 WL 801536, at *4 n.4 (Tenn. Ct. App. Feb. 9, 2018), similarly argued that "the discovery rule should not apply" in his case. We found that argument "unavailing" because, in *Hoffman*, "the Tennessee Supreme Court specifically determined that the discovery rule allowing a plaintiff one year from the date of discovery of his or her cause of action is applicable in health care liability actions, *even where the plaintiff discovers the injury within one year of the date the negligence occurred*." *Id.* (emphasis added).

Applying the rule from *Hoffman*, we reject the position of Sodexo Operations that "the discovery provision of [Tennessee Code Annotated] § 29-26-116(a) is inapplicable" because Plaintiff knew of Decedent's injury within one year. The discovery rule applies "even where the plaintiff discovers the injury within one year of the date the negligence occurred." *Shaw*, 2018 WL 801536, at *4 n.4; *see also Luna*, 1987 WL 7323, at *1 ("[T]he Court in *Hoffman* said that when an injury was discovered within a year after the negligent act, the statute of limitations began to run on the date of discovery.").

### B.   Application of the Discovery Rule

Sodexo Operations raises an alternative argument on appeal, asserting that even if the discovery rule does apply in this case, "Plaintiff was aware that the alleged injury was the result of the wrongful act *of another* on August 26, 2018." (emphasis added). It argues that Plaintiff knew on August 26 that the alleged injury was the result of wrongful conduct, so the statute of limitations began to run on that date. Thus, Sodexo Operations contends that dismissal is required because "pre-suit notice was not provided to Sodexo Operations within one year of the injury." Again, however, this argument focuses too heavily on knowledge of the injury alone.

Over the years, the Tennessee Supreme Court has, in its own words, "refined the discovery rule to make clear that it include[s] not only the discovery of the injury but also the discovery of the source of the injury." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 458 (Tenn. 2012). Thus, "the statute of limitations in a medical malpractice case is tolled until the plaintiff 'discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced his injuries; and (2) the identity of the defendant who breached the duty." *Roe v. Jefferson*, 875 S.W.2d 653, 656 (Tenn. 1994) (quoting *Foster v. Harris*, 633 S.W.2d 304 (Tenn. 1982)). Stated differently, "a medical malpractice cause of action accrues when

one discovers, or in the exercise of reasonable diligence should have discovered, *both* (1) that he or she has been injured by wrongful or tortious conduct *and* (2) *the identity of the person or persons whose wrongful conduct caused the injury*." *Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010) (emphasis added). "Mere awareness of an injury does not necessarily include knowledge that the injury was caused by a breach of the standard of care by a particular defendant." *Id.* at 597. "The question," then, "is not when the injury occurred, but when the relevant person became sufficiently aware of the injury and the wrongful conduct of the defendant to trigger the running of the statute of limitations." *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 558 (Tenn. Ct. App. 2013); *see, e.g.*, *Luna v. St. Thomas Hosp.*, 272 S.W.3d 577, 581 (Tenn. Ct. App. 2007) ("Mrs. Luna's access to names of all the healthcare providers was not tantamount to knowledge of the tortfeasor's identity.").

"If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases." *Sherrill*, 325 S.W.3d at 595. The standard is an objective one, though, and the plaintiff's subjective reaction is not controlling because that would grant plaintiffs the ability to unilaterally determine when the statute of limitations begins to run. *Daffron v. Mem'l Health Care Sys., Inc.*, 605 S.W.3d 11, 23 (Tenn. Ct. App. 2019). Accordingly, "the plaintiff is charged with knowledge of those facts that, in the exercise of reasonable care and diligence, she should have discovered." *Woodruff*, 542 S.W.3d at 495.

Whether a plaintiff exercised reasonable care and diligence in discovering an injury or wrongful conduct is generally a question of fact, but "[w]hen the undisputed facts demonstrate that the plaintiff knew, or in the exercise of reasonable care and diligence should have known, that he or she was injured as a result of the defendant's wrongful conduct, a judgment on the pleadings or dismissal of the claim is appropriate." *Id.* (citing *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 609 (Tenn. Ct. App. 2014)); *see also* *Sherrill*, 325 S.W.3d at 596-97 (noting that whether a plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a question of fact but that summary judgment was appropriate "if the facts in the record and all reasonable inferences demonstrate" that the cause of action accrued on or before a certain date).

For instance, in *Lott v. Mallett*, No. W2020-01233-COA-R3-CV, 2022 WL 894755, at *11 (Tenn. Ct. App. Mar. 25, 2022), a plaintiff claimed she did not know that a certain medical group was her doctor's employer until she was provided medical records in the course of a lawsuit. However, this Court found that she was "at least on notice of the need to investigate" the doctor's employment status when she signed admission forms stating that her doctor was not an employee of the hospital. *Id.* at *12. Furthermore, additional facts "should have pointed [the plaintiff] in [the medical group's] direction with regard to her investigation" and "given [her] a good indication of [his] association with [the medical group]" because she was introduced to him by another doctor she had seen with that medical group and then saw him at the medical group thereafter. *Id.* We explained that

"the discovery rule does not delay accrual 'until a plaintiff *actually knows* the defendant's identity,'" but only until the plaintiff reasonably should have discovered it. *Id.* at *13 (quoting *Grindstaff v. Bowman*, No. E2007-00135-COA-R3-CV, 2008 WL 2219274, at *6 (Tenn. Ct. App. May 29, 2008)). Thus, "'plaintiffs cannot simply wait for information regarding a potential defendant to come to them. They have a duty to investigate and discover pertinent facts through the exercise of reasonable care and due diligence." *Id.* (quoting *Grindstaff*, 2008 WL 2219274, at *6). We added, "[i]ndeed, nothing in the record suggests that even a simple internet search would not have revealed this information." *Id.* at *14. Based on the record, we concluded that "that the undisputed facts mandate[d] only a single conclusion: that Appellant was on notice in May and August 2008 that [the medical group] was 'a possible second defendant' in this case." *Id.*

We reached a different result in *Smith v. Hauck*, 469 S.W.3d 564, 566 (Tenn. Ct. App. 2015), which also involved the identification of an additional defendant during the course of a lawsuit, but arising out of a car accident. In *Smith*, the accident at issue occurred in June 2012. *Id.* Suit was filed within a year, in June 2013. *Id.* The defendant driver filed an answer, but it was not until he responded to interrogatories in December 2013 that he disclosed that he was traveling as part of his employment at the time of the accident. *Id.* That same day, the plaintiffs filed a motion to amend the complaint to add the employer as a defendant. *Id.* Once the amended complaint was filed, the employer moved to dismiss based on the statute of limitations. *Id.* The plaintiffs argued that they "had no idea" that the defendant driver was acting in the scope of his employment until the information was disclosed in discovery, as he did not tell them earlier and there was nothing on his vehicle or in the accident report or other documents available to them that revealed such information. *Id.* at 571. Still, the trial court granted the motion to dismiss, concluding that the plaintiffs failed to exercise reasonable diligence to discover the existence and identity of the additional defendant. *Id.* at 569. Specifically, the trial court noted that the plaintiff filed suit against the defendant driver shortly before the statute of limitations expired and served discovery requests on him two months after the statute of limitations expired. *Id.* On appeal, we explained that "'[t]he plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct.'" *Id.* at 571 (quoting *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002)). "Inquiry notice and constructive notice 'charge[] a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed.'" *Id.* (quoting *Redwing*, 363 S.W.3d at 459). Inquiry notice "is found when a person has 'notice of all the facts that, when pursued with reasonable diligence and good faith[,]' would lead to discovery of the injury and the identity of the actor who caused it." *Id.* at 573. Consequently, "ignorance of facts that *reasonably should have been discovered in the exercise of due diligence* will not trigger operation of the discovery rule to toll the statute of limitations." *Id.* at 574 (emphasis added). In light of the limited record, however, we could not say that the only inference to be drawn from the undisputed facts was that the plaintiffs had inquiry notice that the defendant driver was acting in the course and scope of

his employment with the employer before receiving the discovery responses. *Id.* at 576. As such, summary judgment was reversed. *Id.*

On appeal, Sodexo Operations compares this case to others involving the identity of defendants, primarily relying on *Cary v. Bourne*, No. 02A01-9511-CV-00263, 1997 WL 585750 (Tenn. Ct. App. Sept. 23, 1997). *Cary* involved a husband's claim against several defendants arising out of his wife's prescription drug addiction. *Id.* at *1. On May 26, 1994, he had learned of her addiction when he met with a doctor who showed him the prescriptions his wife had altered. *Id.* at *7. The husband immediately began an investigation into his wife's prescription records, which revealed that she had obtained prescriptions from a number of physicians and dentists and had them filled at several pharmacies. *Id.* at *7, *1. However, his action against them was commenced on May 30, 1995, more than one year after the initial meeting. *Id.* at *5. He argued on appeal that the statute was tolled until the identity of the defendants was known or should have been known, "when he had completed his investigation" into the prescription records. *Id.* at *5, *7. However, the Court distinguished the cases the plaintiff cited because they involved "situations in which the plaintiffs could not have discovered the causes of action within adequate time to bring a timely action." *Id.* at *5. The Court explained that "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.* at *7 (quotation omitted). The Court noted that the plaintiff's own amended complaint and subsequent affidavit both stated that he had discovered the "malpractice" on May 26, 1994, the date when he was first informed of his wife's addiction. *Id.* at *6. Although he had later submitted another affidavit claiming that he did not know about the defendants' malpractice until he completed his investigation on June 20, 1994, the Court discounted the probative value of this statement because it was inconsistent with his earlier statements. *Id.* at *7. In addition, the Court considered a case involving a loss of consortium claim which had held that "the statute of limitations begins to run when the consortium is lost and not when the tortious conduct is discovered." *Id.* at *6. Thus, we observed, "it is not known when the consortium was lost, but it is clear it was sometime before May 26, 1994." *Id.* Given the Court's consideration of the consortium element and the inconsistent statements by the plaintiff in *Cary*, we do not consider it particularly helpful to our analysis in this case.

The other two cases discussed by Sodexo Operations also involved situations in which the Court concluded that the plaintiffs should have known of their claims against various defendants. *See, e.g.*, *Karr v. Saint Thomas Midtown Hosp.*, No. M2020-00029-COA-R3-CV, 2021 WL 457981, at *1-2, *5 (Tenn. Ct. App. Feb. 9, 2021) (concluding that a plaintiff who filed an earlier lawsuit against a doctor arising out of a surgery performed at the hospital knew facts sufficient to put a reasonable person on notice that the patient potentially suffered an injury due to wrongful conduct of "the Hospital Defendants" as well); *Craig v. R.R. St. & Co.*, 794 S.W.2d 351, 357 (Tenn. Ct. App. 1990) (concluding that the decedent did not use due diligence in ascertaining the causal connection between

- 13 -

his illness and the acts of the defendants when he knew he was suffering from an illness caused by exposure to chemicals in his work place, the record did not disclose efforts to ascertain the identity of the chemicals or the suppliers and manufacturers, but he "did the buying of the chemicals and certainly his knowledge of his illness and the causal connection between the illness and his exposure to the chemicals involved, put him on inquiry as to the source thereof"). These cases reflect that "[i]f [the plaintiffs'] lack of knowledge was due to a lack of due diligence, they will not be allowed to plead ignorance and effectively extend the statute of limitations, by way of the discovery rule, simply because they later discovered 'new' information that they 'reasonably should have discovered' much earlier." *Grindstaff*, 2008 WL 2219274, at *6.

The difference here is that the sparse record before us contains absolutely nothing to suggest that Plaintiff knew or should have known of his claim against Sodexo Operations before, at the very earliest, the email from counsel for St. Francis in June 2019. At that point, Plaintiff was told: "Dietary is contracted out to Sodexo (I think)." Plaintiff argues on appeal that this was "the first time that the Plaintiff knew or reasonably could have known that a third-party other than the Hospital may have wrongfully given [Decedent] the fateful meal in hospital room." From the limited record before us, we agree. In fact, during oral argument before this Court, counsel for Sodexo Operations was asked,

> Q.      Is there anything in the record that we have before us here to suggest that Plaintiff should have reasonably discovered the true identity of Sodexo, or that Sodexo was even involved, during the period between the injury, which I believe was August of 2018, and that email, which first occurred raising the name Sodexo? Is there anything that would suggest – anything in the record that would suggest that?
> A.      No ma'am. There is no documentary evidence of that.

As Plaintiff noted in the trial court, Sodexo Operations has not pointed to anything in the record that Plaintiff should have seen or noted that would have alerted it sooner to the involvement of either Sodexo or more specifically Sodexo Operations. When asked during oral argument what Plaintiff could have done to discover the identity of Sodexo Operations earlier, the only suggestion that counsel had was for Plaintiff to have issued presuit notice to the known defendant earlier and set in motion "the chain of events" that ultimately led to the response from St. Francis Hospital, earlier. However, the record does not reflect any undue delay or lack of diligence by Plaintiff. Decedent was served the breakfast tray on August 26, 2018 and he subsequently died on February 14, 2019. Plaintiff sent presuit notice to St. Francis on June 26, 2019. Sodexo Operations simply has not shown that Plaintiff reasonably should have discovered its identity any earlier than June 2019.

In sum, "accrual does not happen under the discovery rule until the putative plaintiff discovers both the nature of the injury and the identity of the tortfeasor." *Club Chalet Homeowners' Ass'n, Inc. v. Matthews*, No. E2011-02237-COA-R3-CV, 2012 WL

- 14 -

4101678, at \*3 (Tenn. Ct. App. Sept. 19, 2012) (citing *Foster*, 633 S.W.2d at 305; *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004)).  "The question, then, is when [Plaintiff] discovered, or in the exercise of reasonable care should have discovered, that [Decedent] had been injured as a result of [] negligence [by Sodexo Operations]." *Young*, 429 S.W.3d at 559.  The undisputed facts do not demonstrate that Plaintiff knew, or in the exercise of reasonable care and diligence should have known, that Decedent was injured as a result of this defendant's wrongful conduct prior to June 2019.  As such, the claim against Sodexo Operations was timely filed, and we affirm the denial of the motion to dismiss. *See, e.g.*, *Draper v. Thorne*, No. 01-A-019008-CV-00305, 1991 WL 7809, at \*2 (Tenn. Ct. App. Jan. 30, 1991) ("If the undisputed evidence shows that the exercise of ordinary care would not have produced the knowledge of injury from negligence of defendant until a time within one year preceding the filing of the suit, the motion for summary judgment should be overruled.").

## IV.  CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded.  Costs of this appeal are taxed to the appellant, Sodexo Operations, LLC, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

- 15 -